**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


IN THE MATTER OF WILLIAM DAWLEY,  :        Bankruptcy No. 01-32215 (DWS)
                                :        Adversary No. 1-1148
              Debtor.       :

_____:

WILLIAM DAWLEY,              :
                                 :
            Appellant,   :        CA  04-2140
                                 :
        v.                    :
                                 :
ESTATE OF STANFORD HARRIS,     :
                               :
           Appellee.    :


<u>**MEMORANDUM**</u>

BUCKWALTER, S.J.                                  September 27, 2005

        William Dawley ("Appellant" or "Debtor") appeals the Bankruptcy Court's denial of discharge.  Presently before the Court are Appellant's Brief (Docket No. 13), Appellee's Reply (Docket No. 15) and Appellant's Reply (Docket No. 16).[1]  For the reasons set forth below, the appeal is denied.

## I.  FACTUAL AND PROCEDURAL HISTORY

        In November 1998, Stanford Harris[2] commenced an action for breach of fiduciary duty, conversion and breach of contract in the Court of Common Pleas of Philadelphia County against Appellant and Payphone, Inc., an entity in which Appellant served as an officer and

---

1.  The Court will also refer to Appellant's Original Brief, which is Docket No. 5.  Specifically, the Court will refer to Exhibit A of Appellant's Original Brief, which is the Bankruptcy Court's Memorandum Opinion and Order denying Appellant's Discharge.

2.  Stanford Harris is deceased.  His estate filed the Complaint in Bankruptcy Court.

operating shareholder.  After a non-jury trial, judgment was entered against Appellant and

Payphone, jointly and severally, in the amount of $180,000.00.  On August 29, 2001, after

Appellant exhausted his state court remedies with respect to the judgment and prior to any

recovery by Appellee on the judgment, Appellant filed for Chapter 7 bankruptcy.

   After Appellant's filing, the Trustee[3] held a meeting of creditors on September 9,

2001.[4]  At the § 341 Meeting, Appellant was examined under oath about his Schedules and

Statement of Affairs, which he had filed under penalty of perjury pursuant to the Bankruptcy

Code and Federal Rules of Bankruptcy Procedure.  According to the Bankruptcy Court,

Appellant omitted certain assets on his Schedules, and Appellant acknowledged these omissions

and mistakes.  These omissions consisted of a parcel of real estate located in New Jersey, cash in

a safe and three bank accounts.[5]  Appellant also wrongly characterized his ownership interests in

certain assets.

   During the questioning at the § 341 Meeting, Appellant admitted that a

$31,048.37 payment ("Undisclosed Cash"), which was not recorded on his submissions, had

been made to him and his wife Judith on July 15, 2001 and deposited in her individual bank

account at Mellon Bank.[6]  When Appellant was questioned as to the whereabouts of the

---

3.  Christine Schubert (the "Trustee") is the permanent Chapter 7 trustee for Appellant's bankruptcy case.

4.  This meeting will be referred to as the "§ 341 Meeting."

5.  Appellant did present an amendment to the Schedules to Trustee at the § 341 Meeting, through which he disclosed his ownership of the New Jersey real estate.

6.  This money was paid to Appellant by Elgee-Saver, Inc. as the final installment in a sale of the assets of Coin Call, Inc., a corporation in which Appellant held a fifty percent interest. At the § 341 Meeting, Appellant represented to the Trustee that the interests in Coin Call and Franbern, which like his interest in Coin Call, Appellant owned with Mr. Bernard Greenstein, were owned by him and his wife, not individually.  According to the Bankruptcy Court, these representations were later contradicted by tax returns and records of streams of payments, which were made

(continued...)

Undisclosed Cash, Appellant testified that it had been spent for living expenses.  Months later,

after the Trustee brought a motion for temporary restraining order on March 14, 2002, it was

disclosed that the Undisclosed Cash had not been spent.  Instead, the Undisclosed Cash had been

withdrawn from Appellant's wife's Mellon Account and placed in a safe in the Appellant's attic.

Appellant and his wife were compelled to turn over the remaining funds, which amounted to

$9,550.00.

        The Undisclosed Cash was not the only interest Appellant failed to disclose.  On

April 19, 2002, again months after Appellant filed Bankruptcy, Appellant filed an amendment to

his Schedules.  This amendment listed cash of $9,550, which was the remainder of the

Undisclosed Cash, and bank accounts in Fox Chase Federal Savings, T/E ($5.73), Summit/Fleet

Bank, T/E ($4,000.00) and Mellon ($4,525.66).[7]

        At trial, Appellant defended his omissions and mistakes by blaming his lawyer,

Marvin Gold, Esq.  In answering why he failed to mention the safes which held the Undisclosed

Cash, Appellant stated that Mr. Gold failed to ask him about the safes in the house.  With respect

to the bank accounts and New Jersey real estate, Mr. Gold testified that Appellant informed him

of the bank accounts and New Jersey real estate but he decided no disclosure was necessary

because the bank accounts were owned as tenants by entireties[8] and the piece of New Jersey real

estate had no value.  Mr. Gold testified to this despite being presented with Appellant's

---

6.  (...continued)
solely to Appellant.

7.  Appellant's bank accounts in Fox Chase Federal Savings, Summit/Fleet Bank and Mellon will referred to
collectively as the "Bank Accounts."

8.  Mr. Gold testified that he believed assets owned as tenants by entireties did not have to be listed on the filings.

Schedules, which he assisted in preparing.  These Schedules listed a number of assets as joint property.  Mr. Gold also cited Appellant's alcoholism as a reason for certain omissions on the Schedules.

Appellee filed a Complaint objecting to Appellant's discharge on November 20, 2001.  Appellee sought an Order denying the discharge of Appellant's debt pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4) or, in the alternative, an exception from discharge of Appellant's debt pursuant to 11 U.S.C. § 523(a)(4).[9]   The Bankruptcy Court held a two day trial on the Complaint on January 14 and 16, 2004.  The Bankruptcy Court entered an order on April 16, 2004, denying Appellant's discharge pursuant to § 727(a)(4).[10]

In this appeal, Appellant asserts the following issues:

1. Whether the [Bankruptcy] Court erred in denying . . . [Appellant's] discharge under Section 727(a)(4), where the [Bankruptcy] Court failed to find that . . . [Appellant] knowingly and fraudulent (sic) make a false oath or account, and where there was uncontroverted (sic) evidence that . . . [Appellant] did not intend to omit disclosure from his schedules, but rather, made all the necessary disclosures to his attorney, and his attorney determined initially not to make the appropriate disclosures in the bankruptcy schedules and the schedules subsequently were amended once the omissions were brought to light?

2. Whether the [Bankruptcy] Court was clearly erroneous in admitting into evidence documents over [Appellant's] objections which were not relied upon or referred to during the trial?

---

9.  Because the Estate of Harris is the Debtor's sole creditor, the Bankruptcy Court's grant of an objection to discharge under §523 would have had the same effect as refusing to discharge the Debtor under § 727.

10.  The Bankruptcy Court rejected Appellee's 11 U.S.C. § 523 claim, concluding that Appellant did not act in a fiduciary capacity and did not embezzle property belong to Appellee.  With respect to Appellee's § 727(a)(2) claim, the Bankruptcy Court found that this claim failed too.  The Bankruptcy Court found that Appellee did not establish that Appellant intended to defraud Appellee in transferring, removing or concealing property.

  3. Whether the [Bankruptcy] Court was clearly erroneous in disregarding uncontroverted (sic) evidence and instead drawing impermissible inferences from those uncontroverted (sic) facts?[11]

(Appellant's Br. 1.)

## II.  STANDARD

  This Court has jurisdiction over appeals from final judgments, orders and decrees from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  28 U.S.C.A. § 158 (2005).  The Court reviews the Bankruptcy Court's "legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof.*"*  In re Trans World Airlines, Inc., 145 F.3d 124, 131 (3d Cir. 1998) (citation omitted).  "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Casey v. Kasal,  223 B.R. 879, 883 (E.D. Pa. 1998) (internal quotations omitted; citations omitted).

## III.  DISCUSSION

  The Court believes this appeal centers on one issue: whether the Bankruptcy Court was correct in denying Appellant's discharge under 11 U.S.C. § 727(a)(4)(A).[12]  As stated

---

11.  As the Court affirms the decision of the Bankruptcy Court to deny discharge under § 727(a)(4)(A), it is not necessary for the Court to address Appellee's arguments as to other possible reasons for denying Appellant's discharge and whether the Court could consider the counter-issues presented by Appellee.

12.  With respect to Appellant's argument that the Bankruptcy Court erred in admitting certain exhibits at trial, the Court finds no merit.  Evidentiary rulings are reversed only upon a showing of abuse of discretion. United States v. Moore, 375 F.3d 259, 262 (3d Cir. 2004).  In the instant case, Appellant must show the Bankruptcy Court abused its discretion in admitting the exhibits in question, and Appellant must display that the Bankruptcy Court's ruling was not harmless error.  Id. at 262.  Appellant claims the Bankruptcy Court admitted items into the record which Appellee did not use or refer to during trial.  According to Appellant, these documents concerned Appellant's wife's individual bank accounts, a joint bank account and a tax return, among other documents.  Appellee claims the exhibits in question were properly admitted as shown by the stipulation attached to a pre-trial statement.
  Despite Appellant's attempts, the Court believes that Appellant failed to show why the exhibits were improperly admitted and how the Bankruptcy Court's decision was not harmless error.

above, the Bankruptcy Court denied Appellant's discharge under 11 U.S.C. § 727(a)(4)(A),

which requires a bankruptcy court to grant a discharge unless the debtor "knowingly and

fraudulently . . . made a false oath or account." 11 U.S.C.A. § 727 (2005). Under the standard,

"a plaintiff must prove the debtor: 1) made a false oath or statement; 2) that was knowing and

fraudulent; and 3) that was material to the bankruptcy proceeding." Casey, 223 B.R. at 884

(citing In re Katz, 203 B.R. 227, 232 (Bankr. E.D. Pa. 1996)). Plaintiff bears the burden of

proving the basis for denial of discharge by a preponderance of the evidence. Id. at 884-885

(citations omitted).

Concerning the "false oath or statement" prong of § 727(a)(4)(A), "[a] debtor's

false statement or omission on Schedules constitutes a false oath or statement under §

727(a)(4)(A)." Id. at 884 (citation omitted). With respect to the "knowing and fraudulent" prong,

fraudulent intent is a question of fact. Id. (citing United States v. Tabor Court Realty Corp., 803

F.2d 1288, 1304 (3d Cir.1986)). Because intent is difficult to show, "circumstantial evidence

may be used to establish a pattern of concealment and nondisclosure." Id. (citations omitted).

"[O]nce it reasonably appears that the oath is false, the burden falls upon the bankrupt to come

forward with evidence that he has not committed the offense charged." In re Tully, 818 F.2d

106, 110 (1st Cir. 1987) (quoting Matter of Mascolo (In re Mascolo), 505 F.2d 274, 276 (1st Cir.

1974). Fraudulent intent may be inferred from an unexplained false statement. In re Mascolo,

505 F.2d at 276 (citing In the Matter of Kaufhold, 256 F.2d 181 (3d Cir. 1958); citation

omitted)). Finally, with respect to the "material" prong, if a false oath or statement concerns

discovery of assets, business transactions, business dealings of the debtor or disposition of the

debtor's property, it is considered material. Casey, 223 B.R. at 884 (citation omitted).

6

The Court will discuss the Bankruptcy Court's findings with respect to the following areas: Banks Accounts, Coin Call, Undisclosed Cash, and diminished capacity and advice of counsel defenses.[13]  After discussing the findings, the Court will examine them under the appropriate standards.

**A.      Bank Accounts**

As recited above, Appellant omitted the Bank Accounts on his Schedules.  The Bankruptcy Court found that this omission shifted the burden to Appellant to explain why he failed to schedule the Bank Accounts.  In attempting to explain why the Bank Accounts were not listed, Appellant testified that he notified Mr. Gold as to their existence but Mr. Gold failed to list them on the Schedules.  Mr. Gold testified that Appellant made him aware of the Bank Accounts but he did not schedule them because they were held as tenants by entireties by Appellant and his wife.  Therefore, in the opinion of Mr. Gold, the bank accounts were not property of the estate and did not need to be scheduled.

The Bankruptcy Court found that the credibility of Mr. Gold's explanation was undermined by the fact that there were many assets with the designation "t/e" listed on the Schedules, which evidenced that Mr. Gold understood that the property should have been scheduled.  According to the Bankruptcy Court, Mr. Gold's explanation also was undermined by the form Schedule instructions, which indicate the appropriate designation for the types of ownership interest: husband, wife, joint and community.  The Bankruptcy Court noted that these

---

13.   With respect to the piece of New Jersey real estate that Appellant failed to list on his Schedules, the Court will not discuss it because the Bankruptcy Court found that "standing alone the failure to disclose this asset is not likely to be material given its questionable value to the estate due to its limited use and [Appellant's] partial ownership." (Appellant's Original Br. Ex. A at 45.)

forms require no legal judgment nor bankruptcy expertise and therefore Appellant should have easily noted the omission of the Bank Accounts.  The Bankruptcy Court implicitly found that Appellant could not explain the omission.

The omission of the Bank Accounts was material in the opinion of the Bankruptcy Court as the "disclosure of the joint Fleet Account where the Undisclosed Cash was originally deposited would have led to the discovery of Judith's transfer of those funds to her individual account."  (Appellant's Original Br. Ex. A at 46.)

### B.   Coin Call

The Bankruptcy Court found that the Trustee established Appellant's inaccurate disclosure of his ownership interest in Coin Call, which was referenced in the Statement of Financial Affairs, and testified to at the § 341 Meeting, as property owned by husband and wife. As to the question of whether the inaccurate disclosure was "knowing or fraudulent," the Bankruptcy Court found that it was not established that Appellant knew that the description of his interest in Coin Call was legally erroneous.  However, the Bankruptcy Court did find that Appellant knew, but did not disclose to the Trustee, that the sale proceeds from Coin Call had been sent to him individually until Appellant's wife was added as payee on the checks.

As to whether the false statement was material, the Bankruptcy Court believed disclosure of the Coin Call information "would have put the Trustee on notice to investigate further the ownership in Coin Call, including securing the tax returns which would have clearly revealed that [Appellant's wife] did not own stock jointly with [Appellant]."  Id. at 48.  The Bankruptcy Court found that this false statement was a material omission as it inhibited the Trustee from recovering the Undisclosed Cash.

8

### C.  Undisclosed Cash

The Bankruptcy Court also found fault with Appellant's failure to disclose the Undisclosed Cash.  First, the Bankruptcy Court found that Appellant omitted the cash from his Schedules.  Second, the Bankruptcy Court found that Appellant lied at the § 341 Meeting.  With respect to the § 341 Meeting, when questioned as to the location of the final payment from Elgee-Savar that he received between July 15, 2001 and July 24, 2001, Appellant responded that he believed it had been deposited in his wife's account at Mellon.  When the Trustee questioned Appellant as to the status of the funds, he replied "we lived on it."  Id. at 51.

The Bankruptcy Court made several findings as to the Undisclosed Cash and Appellant's intent.  First, the Bankruptcy Court found that Appellant's claims that he had no knowledge of the money when preparing his Schedules were not credible.  According to the Bankruptcy Court, the lack of credibility stemmed from Appellant's inability to explain how he spent his salary from Franbern plus the Undisclosed Cash in two months.  Second, in answering that "we lived on it," the Bankruptcy Court found that he lied.  Id.  The Bankruptcy Court wrote that Appellant had a duty to make an inquiry about the existence of the Undisclosed Cash as he filled out his Schedules and prepared to testify.  As he apparently failed to conduct such an inquiry, the Appellant "could only state that having given control of the fund to [his wife], he did not know what amount remained."  Id. at 52.  The Bankruptcy Court found that Appellant failed to "at least testify honestly about his lack of knowledge . . . ."  Id.

According to the Bankruptcy Court, the omission and false statement were material because the Trustee did not recover the only liquid asset of the estate until it was

9

substantially dissipated.  All but $9550.00 of the Undisclosed Cash was spent from the time of the filing of the petition until it was recovered eight months later.

### D.    Diminished Capacity and Advice of Counsel defenses

Appellant offered two defenses at trial for his false statements, a diminished capacity defense[14] and advice of counsel defense.  As to the diminished capacity defense, Appellant argues that he could not have formed the requisite intent under § 727(a)(4)(A) because of his severe alcoholism.  The Bankruptcy Court found Appellant's argument non-persuasive.  At trial, Appellant elicited testimony from his wife, Mr. Gold and Mr. Greenstein in support of the diminished capacity defense.  The Bankruptcy Court found these witnesses appeared biased. Appellant's witnesses' testimony was in contrast to that of the Trustee, who testified that she did not perceive impairment at the § 341 Meeting.  The bias of the Appellant's witnesses, testimony of the Trustee and lack of expert testimony on the subject served as the basis for the Bankruptcy Court's finding that the diminished capacity defense was not in fact a defense in this case.

In addition to the diminished capacity defense, Appellant also attempted an advice of counsel defense to explain his false statements.  Advice of counsel may be an excuse for an inaccurate or false oath.  In re Topper, 229 F.2d 691, 693 (3d Cir. 1956).   However, courts have held that "[a]n attorney's willingness to bear the burden of reproach [cannot] provide blanket immunity to a debtor; it is well settled that reliance upon advice of counsel is, in this context, no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules."   Tully, 818 F.2d at 111 (citations omitted).  Appellant claims he reasonably relied

---

14.   According to the Bankruptcy Court, Appellant neither raised this defense in the Answer to the Complaint nor in the Pretrial Statement.

upon the advice of his attorney, Mr. Gold, when he filled out the Schedules and did not

knowingly make a false account under 727(a)(4)(A).  Further, Appellant claims he disclosed all

of his assets to Mr. Gold and Mr. Gold failed to place them on his Schedules.

   First, the Bankruptcy Court found that Mr. Gold's testimony, through which he

seemingly attempted to shoulder the blame for Appellant, was not credible.  As referenced in

above sections, there were inconsistencies in Mr. Gold's testimony regarding the Coin Call

transaction and the failure to list joint assets.  The Bankruptcy Court found that the instant matter

was not a case where a debtor was being penalized for his counsel's failure to elicit facts or

understand the law.  Second, the Bankruptcy Court dismissed Appellant's reliance on Mr. Gold

as unbelievable in citing Tully, in which the court wrote, "[a] debtor cannot, merely by playing

ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements

which he had made under oath."  Id. at 111.  The Bankruptcy Court found this quote applied to

Appellant's excuses.

### E. Bankruptcy Court's Findings

   In concluding its Memorandum Opinion, the Bankruptcy Court wrote,

> [t]he failure to disclose the $31,048.72 in the context of the other
> omissions and misstatements and the failure to amend the Schedules
> except when the cash was uncovered (and never with respect to the
> improperly designated joint property) evidences a pattern of
> concealment warranting the conclusion that more than oversight and
> mistake were responsible.  The cumulative effect of the foregoing
> pattern of omission and misstatement of material information, is to
> undermine [Appellant's] right to a fresh start.

(Appellant's Original Br. Ex. A at 52-53.)  After reviewing the Bankruptcy Court's findings with

respect to the Bank Accounts, Coin Call, Undisclosed Cash and Appellant's defenses, the Court

11

finds no basis for ruling them clearly erroneous.  The findings are supported by the record, and cumulatively, they support the Bankruptcy Court's decision to deny Appellant's discharge under § 727(a)(4)(A).

**IV.  CONCLUSION**

For the foregoing reasons, Appellant's appeal is denied.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN THE MATTER OF WILLIAM DAWLEY, | : | Bankruptcy No. 01-32215 (DWS) |
| | : | Adversary No. 1-1148 |
| Debtor. | : | |
| _____ | : | |
| | : | |
| WILLIAM DAWLEY, | : | |
| | : | |
| Appellant, | : | CA  04-2140 |
| | : | |
| v. | : | |
| | : | |
| ESTATE OF STANFORD HARRIS, | : | |
| | : | |
| Appellee. | : | |

<u>**ORDER**</u>

AND NOW, this 27th day of September, 2005, upon consideration of Appellant's Brief (Docket No. 13), Appellee's Reply (Docket No. 15) and Appellant's Reply (Docket No. 16), it is hereby **ORDERED** that Appellant's appeal is **DENIED**.  The Bankruptcy Court's decision is **AFFIRMED**.

BY THE COURT:

_____

RONALD L. BUCKWALTER, S.J.